2, 3, 3, Skirata versus DVA. We're ready, please proceed. Mr. Wicks. Your Honor, Stephen Wicks on behalf of Timothy Skirata, the appellant. We're here on the denial of his claim under the Whistleblower Protection Enhancement Act. The administrative judge in this case... Before you get into the merits of the argument, can you tell me what remedy you're seeking in this case? Yes. Compensatory damages under the Whistleblower Act. It's the only remedy that we can find. Well, how do you calculate compensatory damages? Where's the corrective action? I mean, it's supposed to be tied to the covered personnel action, what happened to him. And you're supposed to get, if we were to find in your favor, relief from that. So I don't understand. Where does compensatory damages come in? Well, Your Honor, let's look at what I'll call the broad claim, which is the hostile work environment at large. And the issue is, if he was subjected to a hostile work environment, as is claimed, in this case, intimidation against him as a whistleblower, being shunned across the facility, being impugned by management, being investigated by management, the only remedy that we can find to that, short of the OSC recommending disciplinary action against the alleged perpetrators in this case, would be for compensatory damages under the Whistleblower Act. And that would be... I understand. You say that there's an overall kind of overarching claim about his being retaliated against. What we've got here are factual events that the AJ considered, and those are all kind of tangible. The investigations, the not being invited to meetings, having his overtime requests scrutinized. So those are the kinds of actions that you're seeking compensatory damages for. Well, yes, that's part of it. The AJ did not examine what we consider to be some of the bigger issues in the case. But back to your point, Your Honor, I believe the language of the amended Whistleblower Act, the Enhancement Act, raises the prospect for compensatory damages. I admit, we would much rather be here with something of an explicit economic nature as a remedy to being harassed, as my client contends, for being a whistleblower. But it's all we have, and that is reduced to the non-economic, unliquidated damages. So you're saying the overall umbrella arching, you're calling it harassment, but the AJ was quite specific that you had made allegations about two investigations and an alleged change of duties. So those are all been dealt with by the AJ. That's correct. That's part of the case. But the AJ said that the investigations weren't personnel practices because there was no explicit threat of discipline. So the AJ dismissed that portion of the claim. The AJ also found that his superior, his boss, who was the person alleged to have taken these actions against him, had no knowledge of the earlier disclosure. So one of the primary factors in the whistleblowers is that the disclosure has to have been a contributing factor to the action taken against you. And correct me if I'm wrong, but I thought I understood the AJ in this case to have found that there's no evidence that the supervisor, who supposedly took these actions against him, had any knowledge of the earlier disclosure. That is incorrect, Your Honor. Everyone, I mean, everyone who was involved in initiating the investigations or let's just stick with the investigations at the moment, either knew about his status as a whistleblower or collaborated with one of the individuals who did. For example, Miss Holman was one of the complainants to the AIB. She was told by Dr. Curian, who was the person who outed my client as a whistleblower. While Miss Holman was his supervisor, she was told by Dr. Curian in the context of discussing issues that Miss Holman claimed she had with Mr. Is your complaint about that investigation that the investigation was conducted? It seems to me your answer is that your complaint is that the people who brought the allegation that led to the investigation, right? No, it's both of those, but let me back up just a second, Your Honor. The conversation between Dr. Curian and Miss Holman wasn't about the AIB investigation. That was a conversation they were having while Miss Holman was my client's supervisor, and Dr. Curian said to her in discussing issues that Miss Holman said she had with my client, just remember what happened to Dr. Struthers. That had nothing to do with the AIB except to the extent that two months later after that conversation occurred, Miss Holman was one of the ones who filed a complaint that led to the AIB. So that's my question. I didn't know whether or not your charge about the investigation was that the complaint is that the investigation shouldn't have been conducted, or you were complaining about the complainants coming forward with the complaint, and that was the hostile work environment. It's both because, Your Honor, if you look at the... Given the nature of the allegations raised, don't you think that the agency had an obligation to do an investigation? It's conceivable, but I have to say, if you look at the person who approved that investigation, that's Director Mills. He's the one who signed off on establishing the AIB. He was the convening authority. He had a conflict of interest that violates the requirements for the credentials for the convening authority. He was the appointing authority for Dr. Struthers. So he then is presented with these three complaints from people who all were made aware of whistleblower status, except for Miss Blocher, and I'll talk about her in a moment. So he gets these complaints that all dovetail back to Dr. Struthers, his appointee. Okay, well, let me move... What happened to your client? He should have recused himself. Okay, what was the consequence of the investigation? What action was taken against your client? The consequence of the investigation, at the end, was that my client was told that he was guilty of the conduct that he was charged of in that investigation, but no discipline would be imposed. That was the result. So the covered personnel action is just the conduct of the investigation, since there was no action taken as a result of it? From our perspective, Your Honor, it's the threat that exists with the investigation. He's accused of multiple improprieties, sexual harassment, upward bullying of his supervisor, Miss Holman. Well, if the investigation had been legally improper, then I would think he'd be asking to have it expunged from the record, that investigation, because it reached the conclusion that he'd been guilty, even though no penalty was assessed. I didn't see you making that argument. We did not pursue that because, frankly, Your Honor, the far bigger issue in this case is this. We have two whistleblowers who report Dr. Struthers as impaired. These employees are outstanding employees. No blemishes on their record. The performance evaluations are outstanding, literally. After that, the agency levels multiple investigations against them, and there are a number. And these weren't all allowed into the record, and the witnesses weren't permitted to testify about all of these. But these investigations are then launched by the agency, along with a number of others. But are you saying that if someone witnessed a nurse violating a patient's privacy by conducting a meeting with him in the waiting room, that there shouldn't be an investigation of that sort of thing? No, I'm not saying that, Your Honor. I'm saying this has to be analyzed in the context of the source of that. Well, the A.J. had to assess whether or not the fact that he had made a whistleblower allegation in 2013 was a contributing factor to the conducting or the initiating of an investigation. And you've just admitted that it seems to me, I mean, I think it would be very strange indeed if the kinds of complaints that were made against him weren't at least investigated. I would be very disappointed in the government if people were to make these kinds of complaints against someone and the government said, eh. If these complaints hadn't come from people who were both aware of the whistleblowing and had made... So are you saying that whenever someone is aware of whistleblowing, they can't report action they believe to be improper? Or that there can't be an investigation once they report action that they believe to be improper? I'm saying that if we can show... Because, boy, wouldn't that insulate somebody's potentially bad behavior? Right. And I'm not saying your client did that, but if you make a protected whistleblower, then you can do whatever you want wrong and you'll just tell everybody, hey, I'm a whistleblower, this is what I disclosed to. Everybody knows it, what you've disclosed. Now they're all tainted and none of them can report anything bad you do after that. No. I'm saying, Your Honor, is that certainly investigations could occur. What I'm saying is that if we can show that these investigations wouldn't have occurred but for my client's status as a whistleblower, then that my client is entitled to protection under the Whistleblower Act for that. Because the absence of, the antithesis of that would be this. How have you shown that? The A.J. didn't make any findings about that? Well, we're saying he should have. The A.J. didn't look at, never looked at the question. The fact that, it's a fact, the fact that the people who initiated these investigations were both aware of the whistleblower status and had made very disparaging remarks about my client because of his whistleblowing. And that's in the record. So we have, they're being called sharks. Ms. Holman says, Well, the whole agency knows about your bad conduct as a supervisor, which is directly the opposite of what his performance appraisals show. So all we're saying is this. If my client can prove that these people, A, knew about or were being motivated by his whistleblower status in initiating these investigations and these investigations come up empty, that that's part and parcel of, that's retaliation. And because the opposite of this or the absence of this conclusion will be this. Then they can take what Altoona has done. They've weaponized investigations. So they, in this case, we have all of these investigations launched after, against not only the whistleblowers, but their witnesses. They're all being investigated. Can I, do you have, did you allege when you said the remedy, we started with talking about the remedy and you said you were asking for compensatory damages. Have you put any number on that amount? Well, we can't do that. I mean, compensatory damages in this case would be unliquidated. Certainly, this is one of those cases, Your Honor, where you can make a demand, but the determination of the action. But you get a dollar. Right. Okay, let me ask you, you make a statement at page 37 of your blue brief, that in Guarada's view, the intentional outing of his protective disclosure, dot, dot, dot, is the legal equivalent of a sexual assault in a hostile work environment case? Yeah. I don't follow what you're talking about. What I'm saying is this. If you look at the law on sexual harassment, the law is that there needs to be a course of conduct, severe and pervasive. Right? That's the standard under Harris. But the exception to that is that you can have an event that is severe enough that it constitutes harassment by itself,  Yeah, and in the one case you cite for that proposition, it's that a co-worker rape qualified as harassment under Title VII. Right. And that's what you're analogizing in this case. Well, I'm saying in this context, I'm not saying those two are equivalents in reality. I'm saying legally that a hostile work environment claim, in our opinion, should arise where the whistleblower, as happened here, was outed to the subject of his report directly. Because the consequence of that is exactly what happened at this facility. After that happened, the subject of his report handed my client a list of recruiters and said, You're not going anywhere here. You need to leave. That hasn't proven to be true, has it? Oh, yes. It was undisputed. No, that he isn't going anywhere. I mean, when did that happen? Hasn't he had a resolution? Well, he hasn't had any promotions. Not going anywhere. Has he been entitled to promotions? That's not part of your, you haven't alleged that, right? Well, we didn't, I can't go beyond that record as it exists. But the point of this is that the idea behind the Savage case is that harassment constitutes or is made up of actions that would have a chilling effect on whistleblowers. And what we're saying to you is that if there was ever a case where you would have a chilling effect, it's this kind of case where the whistleblower is outed after the report, is subjected to multiple investigations, is shunned across the facility, and what, there's no remedy for that? I mean, the point is that if that's permitted, then there's no restraint upon the agency to continue to harass my client or anyone else or the witnesses. And in particular, the AJ kept out all the witness testimony about the consequences of harassment of the witnesses because of the investigations that they were subjected to by Director Mills and by other mid-level management in that facility after they became a science in the whistleblower case. Okay, we are well into our rebuttal, so why don't we hear from the government? Can I just get one point of clarification? You said multiple investigations, but I could tell there were two. Well, there were more in the record that weren't permitted in. So they weren't in the record. Unless we rule on the evidence, we've got to deal with what's in front of us. Well, I'm agreeing with three investigations. I thought there were two. Two. Well, there were two privacy investigations and the AIB. Okay. Thank you. Good morning, and may it please the Court. The administrative judge denied Mr. Skra's request for corrective action because he failed to demonstrate that there was any prohibited personnel practice that took place. And I think that while you were talking a lot about the details with Mr. Skrauta's counsel just now, I think it's important to take a step back and look at what the AJ actually did here. He determined that there were three, and Mr. Skrauta raises three different errors, about personnel actions that he claimed took place and that they were prohibited. The administrative judge in this case concluded that Mr. Skrauta was not subjected to any personnel action and certainly not a prohibited personnel action as a result of his whistleblowing activity. So, for instance, one of the first errors that Mr. Skrauta alleges is that the investigation itself, the AIB investigation, was itself a personnel action and it was a prohibited personnel action. But the administrative judge correctly determined that investigations themselves are not per se a personnel action. The MSPB has held that for quite a while in this Johnson v. DOJ case. MSPB, what we're dealing with here is a body of law at the MSPB that has really never surfaced in this court. There's one non-presidential opinion that comes out of one of these investigation cases that doesn't tell us much. The board has a body of law that says in certain circumstances, a pattern of investigations can be hurtful to the government's case. Why don't you explain to us what you understand the MSPB's doctrine to be on this point? So, to be clear, investigations are not irrelevant to the question of whether there could have been a prohibited personnel action. As the MSPB... Explain to me. You're aware of the body of cases? Sure. You have, right? Yes, and as the MSPB has held in its Russell v. Department of Justice case, it stated that the board will consider evidence regarding the conduct of an agency investigation when the investigation was so closely related to the personnel action that it could have been a pretext for gathering evidence to retaliate against an employee for whistleblowing activity. In that case, the MSPB dealt with a prison guard who had blown the whistle on the warden. The warden then later initiated an investigation into the whistleblower, and the MSPB determined that because that investigation was really a pretext to retaliate against the whistleblower by the warden... We've got the client, the appellant here, who blew the whistle against somebody, right? Correct. A boss, and later somebody who knew about all that starts an investigation against his client. So there's two reasons why it's not applicable in this situation. First, it was not a pretext, because as the administrative judge clearly held and as Judge Moore recognized, three different employees filed complaints against Mr. Scarrata at the VA Medical Center in Altoona. And the administrative judge said it was, quote, it would have been foolhardy for the agency to ignore these complaints. So therefore, the existence of at least the AIB investigation was not a pretext to retaliate against Mr. Scarrata. The other part of that issue is there was no threat of discipline merely being subject to an investigation. And what the administrative judge also looked at was, can an investigation be so burdensome, so as to constitute a prohibited personnel action under 5 U.S. Code Section 2302A12? And that's the catch-all provision that talks about it can be a prohibited personnel action if an employee is subject to a significant change in his duties, responsibilities, or working conditions. Okay, so let's move on to that second argument. Because he alleges his workload was changed and his duties diminished, he alleges that Dr. Watson was the superior officer, the boss who did it. And doesn't the AJA expressly find there's no evidence suggesting that Dr. Watson had any knowledge of the earlier whistleblower activities? Yes. So that cuts that one gone, right? We've got investigations. We've got workload. What was the third? To be – well, just in the interest of full disclosure, Dr. Watson was one of multiple people that Mr. Scarrata has alleged was aware of – well, had retaliated against Mr. Scarrata. And there are other people who did, in fact, have knowledge of his whistleblowing who Mr. Scarrata also claims was involved in this retaliation. But for Mr. – Were involved in the decision to supposedly reduce his workload? Well, no, not for that particular – Right. That's why I said we're focusing on each one individually. Okay. So the – Okay, workload gone. Well, workload gone, right. Because if they failed to allege one of the critical aspects, then even if that is a prohibited personnel action, they have failed to allege that the decision-maker had any knowledge at all. So not a contributing factor. I don't see how we could possibly reverse that, especially under our standard review. The investigation point I feel like you have covered. You've investigated it thoroughly. So what else is there? Mr. Scarrata alleges that some of the – well, the administrative judge concluded that for some of his allegations with regard to this significant change in duties, responsibilities, or working conditions were meritless. For instance, Mr. Scarrata's allegation that he was disinvited to meetings. At APPX 18, the administrative judge specifically credited the testimony of witnesses and said that I simply don't believe that he was disinvited to those meetings. So that wasn't a basis for his allegation that there was a change in his duties, responsibilities, or working conditions. The same is true for his removal as the selecting official for an audiologist. The AJA determined that that was not a personnel action. Mr. Scarrata claims that it was. He doesn't provide any basis or authority for claiming that the removal as a selecting official is a personnel action. And he also alleges that because he was forced to choose his second option for the audiologist, that potentially in the future the less qualified new hire would somehow screw up, which then would reflect poorly on his department and him specifically, and he would be subject to some sort of discipline as a result of that. The AJA specifically found that that potential future harm was too remote to be considered any significant change in the duties, responsibilities, or working conditions. Unless the court has further questions for me, I would respectfully request that you affirm the- When I read the line of board cases about whether or not you should get worried about a succession of investigations, it struck me that in two or three of those opinions, the board was essentially focusing on the government's argument, well, we would have done it anyhow. The government's defense, and they were looking at the instigation of baseless investigations as showing animus in the mind of the hiring agency, so as to undermine that leg of the proof that it would have done it anyhow. And I wondered whether or not that really isn't where this line of assuming that we were to agree with your adversary, that a line of investigations took place here that are problematic. The question is, do you fit them under the prohibited personnel practice shell and use it as an analytic tool there, or do you use it instead to say it only comes into play when the government is trying to argue we would have taken the discipline anyhow, et cetera, et cetera? Well, I think that if I understand your question, you're really asking about whether the analysis should be brought under the car factors. If there isn't a personnel action, and would the agency have taken it in any event? I think in this case, to get to that question, you have to first answer, well, was it a personnel action and was there some sort of animus? Here, for the reasons I talked about a moment ago with regard to pretext, there's three different complainants, it wasn't undertaken as a result of animus. And there's also, I think, an argument that could be made for an investigation that becomes so onerous and burdensome to an employee that it becomes a significant change to his duties, responsibilities, and working conditions. So if he was required to meet with investigators twice a week for four hours. What about a hostile work environment? Well, that hostile work environment, this court has never held that a hostile work environment or the creation of such an environment is itself a prohibited personnel action. The court has for years. But we have either elided the issue or it hasn't been presented to us. Correct. And so it would otherwise, as we described in our brief, be subject to the analysis in 2302A2A12, which asks, is it a significant change of responsibility? So if an investigation was so onerous to an employee, then potentially it could fall within that A12 section. In this case, Mr. Scarrato was only interviewed a single time for all three of those investigations. So the administrative judge concluded properly that even if the court were to inline under the hostile working environment catch-all provision, it still wouldn't have qualified as a personnel action. Thank you. Thank you. Thank you. We'll restore two minutes, everybody. Just one? Okay. I have to confess, I think it's just one. Okay. And Judge Moore, with respect to the question you asked me earlier, I do apologize that I'd forgotten about Dr. Watson. He came in after Ms. Holman as my client supervisor. He was not aware of the whistleblowing. Frankly, there wasn't anything he did that was of any significance in this case, at least from my perspective, that we thought he was an issue. Thank you for clarifying. Thank you. We thank both sides, and the case is submitted.